KAREN P. HEWITT
United States Attorney
LUELLA M. CALDITO
Assistant U.S. Attorney
California State Bar No. 215953
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7035
Luella.Caldito@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CASE NO. 08CR1004-H |
|---|---|---|
| Plaintiff, | ) ) | DATE: May 19, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) ) | GOVERNMENT'S RESPONSE IN OPPOSITION TO |
| JUAN HERNANDEZ-GARCIA, | ) | DEFENDANT'S MOTION TO: |
| | ) ) | (1) COMPEL DISCOVERY/PRESERVE EVIDENCE; |
| Defendant. | ) | (2) SUPPRESS STATEMENTS; AND |
| | ) ) | (3) GRANT LEAVE TO FILE FURTHER MOTIONS. |
| | ) | |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Luella M. Caldito, Assistant United States Attorney, and hereby files its Response in Opposition to Defendant's above-referenced Motions. This Response is based upon the files and records of this case.

**I**

**STATEMENT OF THE CASE**

On April 2, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with Deported Alien Found In the United States, in violation of Title 8, United States Code, Section 1326(a) and (b). The Indictment alleges that Defendant had been

removed from the United States subsequent to November 26, 2004. Defendant was arraigned on the Indictment on April 10, 2008, and pled not guilty to the Indictment

## II

## STATEMENT OF FACTS

**A.    THE INSTANT OFFENSE**

On January 23, 2008, at approximately 3:50 p.m., Officer Whitaker of the Escondido Police Department stopped Defendant for riding his bicycle on the sidewalk, which is a violation of Escondido Municipal Code 5-5. Defendant identified himself as Juan Hernandez Garcia with a date of birth of December 1, 1979. Defendant stated that he had never been arrested nor issued a citation from the police. Hernandez further stated that he had no form of identification and that he had no other names.

While questioning Defendant, Officer Whitaker noticed that Defendant's speech was rapid and that his hands were fidgety. At one point during the questioning, Defendant stood up against Officer Whitaker's instructions. In order to prevent Defendant from fleeing before determining his identification, Officer Whitaker handcuffed Defendant. Officer Whitaker then asked Defendant if he could search him for identification. Defendant consented to the search. While searching Defendant's right lower leg, Officer Whitaker noticed a piece of clear plastic sticking out of Defendant's right shoe. When Officer Whitaker removed the clear plastic bag, he recovered a glass drug pipe with white residue inside of it.

During the detention, Defendant's cell phone rang twice. Defendant requested that Officer Whitaker answer his phone. The first time the caller asked for "Brian Hernandez." Officer Whitaker identified himself to the caller and explained that he must have the wrong number. Immediately after hanging up the phone, it rang again. When Officer Whitaker answered the phone, a similar voiced caller asked for "Juan."

Officer Whitaker then transported Defendant to the Escondido Police Department to confirm Defendant's identity. At the police department, Officer Whitaker discovered Defendant's true identity by using a booking computer. The records check revealed that Defendant had a warrant under the name of Bryan Diaz Hernandez. The records check also revealed that Defendant was previously deported from the United States.

1  Officer Whitaker then advised Defendant of his <u>Miranda</u> rights, which he acknowledged and waived. Officer Whitaker then questioned Defendant about the glass pipe recovered from his shoe. Defendant was later booked into Vista County Jail.

While in custody, Immigration and Customs Enforcement Agent G. Bautista conducted a field interview of Defendant. Defendant freely admitted that he was in the United States illegally and had no immigration documents that would allow him to enter or remain in the United States. After determining that Defendant was a citizen of Mexico, Defendant was transported to the Immigration Customs Enforcement Field Office in San Diego for further investigation. Record checks revealed that Defendant was previously deported or removed from the United States. Defendant was then advised of his <u>Miranda</u> rights, which he again acknowledged and waived. Defendant stated that his true name was Juan Manuel Hernandez-Garcia. Additionally, Defendant admitted that he was a citizen of the Mexico by birth in Jalisco, Mexico. Defendant stated that he had not obtained permission to enter the United States and that he did not have any documents that would allow him to enter or reside in the United States. Lastly, Defendant admitted that he knew it was against the law to re-enter the United States after being deported.

### B. **DEFENDANT'S IMMIGRATION HISTORY**

Defendant is a citizen of Mexico who was ordered deported by an Immigration Judge on or November 3, 1998. Defendant was physically removed from the United States on several occasions, including October 28, 1997, July 24, 1998, November 3, 1998, July 16, 1999, July 7, 2000, June 18, 2001, July 27, 2004 and December 15, 2006.

### III

### ARGUMENT

### A. **THE UNITED STATES HAS AND WILL COMPLY WITH ITS DISCOVERY OBLIGATIONS**

The United States has and will continue to fully comply with its discovery obligations. To date, the United States has produced 112 pages of discovery to Defendant's counsel and a DVD recording of Defendant's post-arrest interview. As of today, the United States has received no reciprocal discovery. Counsel believes that all discovery disputes can be resolved amicably and informally in this

case. In view of the below-stated position of the United States concerning discovery, it is respectfully requested that no orders compelling specific discovery by the United States be made at this time. The Government has no objection to the preservation of evidence for a reasonable time period

1. Defendant's Statements

The United States recognizes its obligation under Federal Rules of Criminal Procedure ("Rules") 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant any written statements and the substance of Defendant's oral statements. The United States has produced all of Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this time. If the United States discovers additional oral or written statements that require disclosure under the relevant Rules, such statements will be promptly provided to Defendant.

2. Arrest Reports, Notes and Dispatch Tapes

The United States does not object to the request for arrest reports and has already produced to Defendant all arrest reports known to the United States at this time.

The United States has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The

1  notes are not <u>Brady</u> material because the notes do not present any material exculpatory information, or
2  any evidence favorable to Defendant that is material to guilt or punishment. <u>Brown</u>, 303 F.3d at 595-96
3  (rough notes were not <u>Brady</u> material because the notes were neither favorable to the defense nor
4  material to defendant's guilt or punishment); <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3d Cir. 1994)
5  (mere speculation that agents' rough notes contained <u>Brady</u> evidence was insufficient). If, during a
6  future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or
7  <u>Brady</u>, the notes in question will be provided to Defendant.

8  The United States is unaware of any dispatch tapes related to this case at this time.

9      3.     <u>Defendant's A-File</u>

10  Absent a court order, the United States will not provide the defense with an opportunity to view
11  the Defendant's A-file. The information in Defendant's A-file is equally available to Defendant through
12  a Freedom of Information Act request. Even if Defendant could not ascertain the A-File through such
13  a request, the A-File is not Rule 16 discoverable information. The A-File contains information that is
14  not discoverable like internal government documents and witness statements. <u>See</u> Fed. R. Crim. P.
15  16(a)(2). Witness statements would not be subject to production until after the witness for the
16  United States testifies and provided that a "motion" is made by Defendant. <u>See</u> Fed. R. Crim. P.
17  16(a)(2) and 26.2. Thus, the A-File associated with Defendant need not be disclosed.

18  The United States has not received the defense's proposed order to view the Defendant's A-file.
19  For the reasons stated above, the United States would object to an order requiring the Government to
20  produce or to allow the defense to inspect the <u>entire</u> A-file. The United States will produce all the
21  deportation documents it intends to introduce at trial.

22      4.     <u>Brady Material</u>

23  The United States is well aware of and will continue to perform its duty under <u>Brady v.</u>
24  <u>Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory
25  evidence within its possession that is material to the issue of guilt or punishment. Defendant, however,
26  is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused,
27  or which pertains to the credibility of the United States' case. As stated in <u>United States v. Gardner</u>,
28  611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty

1    to disclose every bit of information that might affect the jury's decision; it need only disclose
2    information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775
3    (citation omitted).
4        The United States will turn over evidence within its possession which could be used to properly
5    impeach a witness who has been called to testify.
6        Although the United States will provide conviction records, if any, which could be used to
7    impeach a witness, the United States is under no obligation to turn over the criminal records of all
8    witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such
9    information, disclosure need only extend to witnesses the United States intends to call in its case-in-
10   chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d
11   1305, 1309 (9th Cir. 1979).
12       Finally, the United States will continue to comply with its obligations pursuant to United States
13   v. Henthorn, 931 F.2d 29 (9th Cir. 1991).
14       5.    Any Information That May Result in a Lower Sentence Under the Guidelines
15       The United States has complied and will continue to comply with its discovery obligations under
16   Brady v. Maryland, 373 U.S. 83 (1963).
17       6.    Defendant's Prior Record
18       The United States has provided Defendant with a copy of Defendant's known prior criminal
19   record under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129, 130 (9th Cir.
20   1990). Should the United States determine that there are any additional documents pertaining to
21   Defendant's prior criminal record, those will be promptly provided to Defendant.
22       7.    Any Proposed 404(b) Evidence
23       The United States will disclose, in advance of trial, the general nature of any "other bad acts"
24   evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).
25       8.    Evidence Seized
26       The United States has complied and will continue to comply with Rule 16(a)(1)© in allowing
27   Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence
28

1 which is within the possession, custody or control of the United States, and which is material to the
2 preparation of Defendant's defense or are intended for use by the United States.

3       9.      Request for Preservation of Evidence

4 As stated above, the United States will preserve all evidence to which the Defendants are entitled
5 pursuant to the relevant discovery rules. The United States also has no opposition to a preservation
6 order, should Defendant seek one from this Court.

7       10.     Tangible Objects

8 The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing
9 Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that
10 are within its possession, custody, or control, and that is either material to the preparation of
11 Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at
12 trial, or was obtained from or belongs to Defendant. The United States, however, need not produce
13 rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

14

15      11.     Evidence of Bias or Motive to Lie

16 The United States is unaware of any evidence showing that any prospective Government witness
17 is biased or prejudiced against Defendant or has a motive to falsify testimony. The United States will
18 comply with its obligations under Brady, Henthorn, and Giglio.

19      12.     Impeachment Evidence

20 The United States is unaware of any evidence that any prospective witness has engaged in any
21 criminal act, but will comply with its obligations under Brady, Henthorn, and Giglio, as well as all other
22 applicable rules of discovery. The Government is unaware of any statements favorable to Defendant,
23 and repeats that all reports from the date of arrest have been produced.

24      13.     Evidence of Criminal Investigation of Any Government Witness

25 The United States objects to providing any evidence that a prospective witness is under criminal
26 investigation, but will provide the conviction record, if any, which could be used to impeach all
27 witnesses the United States intends to call in its case-in-chief.

28

1    In addition, the United States will comply with <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. <u>United States v. Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002)(<u>citing</u> <u>United States v. Jennings</u>, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an <u>in</u> <u>camera</u> inspection and review.

14.    <u>Evidence Affecting Perception, Recollection, Ability to Communicate</u>

The United States is unaware of any evidence tending to show that any prospective witness's ability to perceive, recollect, tell the truth, or communicate.

15.    <u>Witness Addresses</u>

The United States objects to this request as overbroad, unnecessary, and unsupported. Through discovery, Defendant has the names of the officers and agents involved in her arrest. In addition, the United States will provided Defendant with a list of witnesses it intends to call in its trial memorandum. The United States objects to the request for the name and address of witnesses who will not be called by the Government at trial as overbroad and irrelevant.

16.    <u>Name of Witnesses Favorable to Defendant</u>

The United States is unaware of any witnesses favorable to Defendant.

17.    <u>Statements Relevant to the Defense</u>

All known statements have been produced. The United States will continue to comply with its obligation to produce all evidence relevant to the defense.

18.    <u>Jencks Act Material</u>

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

19.    <u>Giglio Information</u>

The United States has complied and will continue to comply with its discovery obligations under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

20. <u>Reports of Scientific Tests or Examinations</u>

Defendant requests the results of any scientific or other tests or examinations in connection with this case. The United States will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the United States intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

21. <u>Henthorn Material</u>

The United States will comply with its obligations under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. <u>United States v. Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002) (<u>citing</u> <u>United States v. Jennings</u>, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an <u>in camera</u> inspection and review.

22. <u>Informants and Cooperating Witnesses</u>

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an <u>in camera</u> inspection to determine whether disclosure of the informant's identity is required under <u>Roviaro</u>. <u>See</u> <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant or cooperating witness who is a material witness with evidence helpful to the defense or essential to a fair determination in this case, the United States will either disclose the identity of the informant or submit the informant's identity to the Court for an <u>in camera</u> inspection.

23. <u>Expert Witnesses</u>

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

24. <u>Residual Request</u>

The United States has complied with Defendant's residual request for prompt compliance with Defendant's discovery requests and will continue to do so.

When a person has been deprived of his or her freedom of action in a significant way, law enforcement officers must administer <u>Miranda</u> warnings prior to questioning the person. <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Such a requirement, however, has two components: (1) custody, and (2) interrogation. <u>Id.</u> at 477-78.

**B.     DEFENDANT'S STATEMENTS ARE ADMISSIBLE**

Defendant moves to suppress his initial statements to Officer Whitaker by arguing that the statements were obtained in violation of <u>Miranda</u> and that the statements were involuntary. Defendant also requests an evidentiary hearing to determine the admissibility of these statements. As shown below, Defendant's motions should be denied.

1. Defendant's Initial Questioning by Police Occurred During an Investigatory Stop Required No Miranda Warnings

The Ninth Circuit has consistently held, "[a]n officer may make a brief investigatory stop of a moving vehicle if, under the totality of the circumstances, the officer knows of articulable facts leading to a reasonable or founded suspicion that the individual stopped may be or has been engaged in criminal activity." <u>United States v. Greene</u>, 783 F.2d 1364, 1367 (9th Cir. 1986); <u>Gallegos v. City of Los Angeles</u>, 308 F.3d 987, 990-993 (9th Cir. 2002) ("Under <u>Terry</u> and its progeny, the Fourth Amendment allows police to conduct a brief, investigatory search or seizure, so long as they have a reasonable articulable suspicion that justifies their actions."); <u>United States v. Corral-Villavencio</u>, 753 F.2d 785, 789 (9th Cir. 1985).

As to Defendant's Fifth Amendment rights during the initial stop, the Ninth Circuit has noted that "[o]f course, not all questioning by law enforcement officers triggers the [<u>Miranda</u>] warning

1  requirement. The sine qua non of Miranda is custody. 'By custodial interrogation, we mean questioning
2  initiated by law enforcement officers after a person has been taken into custody or otherwise deprived
3  of his freedom of action in any significant way.'" United States v. Butler, 249 F.3d 1094, 1098 (9th Cir.
4  2001) (citation omitted). Courts have consistently found that traffic stops are not custodial interrogation
5  for the purposes of Miranda. See Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984) (holding "that
6  persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda");
7  Pennsylvania v. Bruder, 488 U.S. 9, 10-11 (1988) ("ordinary traffic stops do not involve custody for
8  purposes of Miranda"); Butler, 249 F.3d at 1098 ("The case books are full of scenarios in which a
9  person is detained by law enforcement officers, is not free to go, but is not 'in custody' for Miranda
10 purposes. A traffic stop is not custody."). Thus, unless the investigatory stop exceeded its legal scope,
11 officers were not required to provide Defendant with any Miranda warnings during their initial
12 encounter.
13      Here, Officer Whitaker properly conducted an investigatory stop of Defendant because
14 Defendant was riding his bicycle on the sidewalk, in violation of the Escondido Municipal Code.
15 Therefore, Defendant was not "in custody" and Officer Whitaker did not have to advise Defendant of
16 the Miranda warnings prior to questioning him.
17      2.    Biographical Information is Not Protected by the Fifth Amendment
18      At the time Defendant was detained at the scene, Officer Whitaker asked Defendant questions
19 relating to his identity. Defendant's statements in response to these questions should not be suppressed.
20 Questions about a person's identity are not unconstitutional even if identification of the person may help
21 lead to the prosecution of that person for a crime. United States v. Washington, 462 F.3d 1124, 1133
22 (9th Cir. 2006), citing California v. Byers, 402 U.S. 424, 432-33 (1971)(finding no Fifth Amendment
23 violation even though complying with request to identify oneself might provide a link in the chain of
24 evidence needed to prosecute); United States v. Leal, 460 F.2d 385, 389 (9th Cir. 1972)("The
25 identification of oneself is not self-incriminating and thus not protected by the Fifth Amendment.").
26 Thus, Defendant's statements are admissible.

### 3. Defendant's Request for an Evidentiary Hearing Should Be Summarily Denied For Failure to Comply with Local Criminal Rule 47.1(g)

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements). Specifically, Local Criminal Rule 47.1(g)(1) states that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s)" and that "[t]he Court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition." Here, Defendant has failed to support his allegation with a declaration, in clear opposition to Local Rule 47.1(g). The Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991).

In addition, Defendant's allegation that a Miranda violation occurred and that his statement was involuntary fails to demonstrate a disputed factual issue requiring an evidentiary hearing. Indeed, Defendant did not allege any facts to support his claim that his statements were involuntary. See United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citation omitted). As such, this Court should deny Defendant's Motion. See Batiste, 868 F.2d at 1092 (stating that Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts).

**C.     MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

The Government opposes this request unless the motion is based upon newly discovered evidence not available to Defendant at the time of the motion hearing.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests that Defendant's Motion be denied where opposed.

DATED: May 11, 2008.

           Respectfully Submitted,

           KAREN P. HEWITT
           United States Attorney


           LUELLA M. CALDITO
           Assistant U.S. Attorney
           Luella.Caldito@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                                             )<br>                        Plaintiff,            )<br>                                                             )<br>              v.                                         )<br>                                                             )<br>JUAN HERNANDEZ-GARCIA,         )<br>                                                             )<br>                        Defendant.         )<br>_____ ) | Case No. 08CR1004-H<br><br><br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

     I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL, SUPPRESS STATEMENTS AND GRANT LEAVE FOR FURTHER MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     1. Bridget Kennedy of Federal Defenders of San Diego, Inc.

     I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

     None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on May 11, 2008

                                               /s/ Luella M. Caldito<br>
                                             LUELLA M. CALDITO