**BRIDGET KENNEDY**
California State Bar No. 253416
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
E-Mail: bridget_kennedy@fd.org

Attorneys for JUAN MANUEL HERNANDEZ-GARCIA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARILYN L. HUFF)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 08CR1004-MLH |
| Plaintiff, ) | DATE: August 4, 2008 |
| ) | TIME: 2:00 p.m. |
| v. ) | |
| ) | NOTICE OF MOTION AND MOTION TO |
| JUAN MANUEL HERNANDEZ-GARCIA, ) | DISMISS THE INDICTMENT FOR DUE |
| ) | PROCESS VIOLATION DURING |
| Defendant. ) | UNDERLYING REMOVAL PROCEEDING |
| ) | |

TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY;
      LUELLA CALDITO, ASSISTANT UNITED STATES ATTORNEY.

**PLEASE TAKE NOTICE** that on August 4, 2008, or as soon as counsel may be heard, Juan Manuel Hernandez-Garcia, by and through his attorneys Bridget Kennedy and the Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the motion below to dismiss the indictment for due process violation during the underlying removal proceeding.

//
//
//
//
//
//

1                                                                                              08CR1004-MLH

# **MOTION**

The accused, Juan Manuel Hernandez-Garcia, by and through his counsel Bridget Kennedy, and Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an order:

1) to dismiss the indictment for due process violations during the underlying removal proceeding.

This motion is based upon the instant motion and notice of motion, the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at the time of the hearing on this motion.

Respectfully submitted,

Dated: July 21, 2008

 *s/   Bridget Kennedy*
**BRIDGET KENNEDY**
Federal Defenders of San Diego, Inc.
Attorneys for Juan Manuel Hernandez-Garcia

**BRIDGET KENNEDY**
California State Bar No. 253416
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California  92101-5008
Telephone:  (619) 234-8467
E-mail: bridget_kennedy@fd.org

Attorneys for JUAN MANUEL HERNANDEZ-GARCIA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARILYN L. HUFF)**

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | CASE NO. 08CR1004-MLH |
|                                 ) | |
| Plaintiff,     ) | DATE: August 4, 2008 |
|                                 ) | TIME: 2:00 p.m. |
| v.                              ) | |
|                                 ) | STATEMENT OF FACTS AND |
| JUAN MANUEL HERNANDEZ-GARCIA,   ) | MEMORANDUM OF POINTS AND |
|                                 ) | AUTHORITIES IN SUPPORT OF |
| Defendant.    ) | MR. HERNANDEZ-GARCIA'S |
|                                 ) | MOTION TO DISMISS THE |
|                                 ) | INDICTMENT |

**STATEMENT OF FACTS**

**A)**    **Mr. Hernandez-Garcia's Life and Family**

Mr. Hernandez-Garcia was born on October 2, 1979. Ex. A (Declaration of Teresa Garcia). He first came to the United States in 1986, when he was seven years old. Ex. A. He lived in the United States with his mother continuously until 1997. Ex. A. He attended school in the United States from second grade until eleventh grade. Ex. A. Mr. Hernandez-Garcia is culturally an American. His closest family members are United States citizens who live in Southern California. His mother became a legal permanent resident of the United States when he was a young child. Ex. A. She became a naturalized citizen in 1990. Ex. A. His two younger sisters are naturalized citizens. Ex. A.

//

**B)     Mr. Hernandez-Garcia's Removal Proceedings and Prosecution**

On October 28, 1997, Mr. Hernandez-Garcia was granted voluntary departure from the United States. Ex. B. He was given until October 29, 1997 to return to Mexico. Ex. B. Despite being granted voluntary departure, he was physically removed to Mexico by the Immigration and Naturalization Service on October 28, 1997. Ex. C. A handwritten note is stapled to the warrant of removal stating: "This should have been recorded as a voluntary departure. See IJ order." Ex. C. On November 27, 1997, a Notice to Appear was issued by the Immigration and Naturalization Service against Mr. Hernandez-Garcia, alleging that he entered the United States without inspection.[1] Ex. D. He was served with the notice on January 16, 1998. Ex. D. He appeared before Immigration Judge Kenneth A. Bagley on January 21, 1998. A transcript of these proceedings are provided as Exhibit E.

Judge Bagley addressed Mr. Hernandez-Garcia as part of a group in the beginning of the proceedings. Ex. E. He explained that if he ordered removal to any particular individual, it meant that he had found him ineligible for relief from removal. Ex. E. During Mr. Hernandez-Garcia's proceedings, Judge Bagley questioned him about his parent's citizenship. Ex. E. Mr. Hernandez-Garcia informed the judge that his mother was a naturalized United States Citizen. Ex. E. The judge then questioned Mr. Hernandez-Garcia about his criminal history, and whether he had ever been before an immigration judge. Ex. E. Mr. Hernandez-Garcia stated that he had been before an immigration judge once, in 1997. Ex. E. Judge Bagley then raised the issue that Mr. Hernandez-Garcia might be eligible for cancellation of removal, by asking the government attorney whether he had "any indication that he would be eligible for cancellation of removal." Ex. E. The government attorney did not respond to the question. Ex. E. The judge questioned the government attorney as to whether he had an order of removal by an immigration judge in his file. Ex. E. The government attorney responded that he did not. Ex. E. Judge Bagley then asked Mr. Hernandez-Garcia whether the judge had ordered his removal to Mexico. Ex. E. Mr. Hernandez-Garcia answered "yes." Ex. E. In fact, Mr. Hernandez-Garcia had not been ordered removed -- he had been granted voluntary departure.

---

[1] Mr. Hernandez-Garcia was specifically charged with being removable under INA § 212(a)(6)(A)(i); 8 U.S.C. § 1182(a)(6)(A)(i). Under its provisions, "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

Ex. B.  At the time of his removal proceedings, Mr. Hernandez-Garcia had *never* been ordered removed by an immigration judge.  The government attorney had stated that there was *no order of removal in Mr. Hernandez-Garcia's immigration file*.  Ex. E.  Yet, after hearing from Mr. Hernandez-Garcia that he had been ordered removed by an immigration judge, Judge Bagley ordered his removal to Mexico.  Ex. E.  Thus, by his own explanation, he explicitly found that Mr. Hernandez-Garcia was ineligible for relief from deportation.  Ex. E.

On April 2, 2008, Mr. Hernandez-Garcia was indicted by the January 2007 Grand Jury for Deported Alien Found in the United States in violation of 8 U.S.C. § 1326.  The indictment alleges that he was found in the United States on January 23, 2008.

## MOTION

### This Court Must Dismiss the Indictment Because Mr. Hernandez-Garcia's Due Process Rights Were Violated at the Underlying Removal Proceedings.

A defendant charged with illegal reentry under 8 U.S.C. § 1326, such as Mr. Hernandez-Garcia, has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction.  United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987).  The text of section 1326 provides for collateral attack if the defendant shows that 1) he exhausted all administrative remedies available to him to appeal his removal order; 2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and 3) the entry of the order was fundamentally unfair.  8 U.S.C. § 1326(d); United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047-48 (9th Cir. 2004).

A removal order is fundamentally unfair if: 1) the defendant's due process rights were violated by defects in the removal proceedings, and 2) the defendant suffered prejudice as a result of the defects.  Ubaldo-Figueroa, 364 F.3d at 1048.  Prejudice is established if the defendant had a plausible ground for relief from deportation.  United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1999).  Once the defendant makes a prima facie showing that he had a plausible ground for relief, the burden shifts to the government to "demonstrate that the procedural violation *could not* have changed the proceedings' outcome."  United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003) (emphasis added).  As explained

below, Mr. Hernandez-Garcia can demonstrate each of the elements necessary for this Court to sustain his collateral attack.

**A.  Mr. Hernandez-Garcia is Exempt from the Exhaustion Requirement, and he was Improperly Denied Judicial Review Because His Appellate Waiver was Not Considered and Intelligent.**

Mr. Hernandez-Garcia can show both that he is exempt from the exhaustion requirement, and that he was improperly denied judicial review of his underlying removal order because his appellate waiver was not considered and intelligent. His waiver was not considered and intelligent because Judge Bagley erroneously told Mr. Hernandez-Garcia that he was not eligible for any type of relief from deportation, when in fact he was eligible for relief through adjustment of status.

Defendants are "exempted from the exhaustion bar" when the appellate waiver was not "sufficiently 'considered and intelligent' under the Due Process Clause of the Fifth Amendment." Ubaldo-Figueroa, 364 F.3d at 1050. Additionally, "the deportee is deprived of judicial review in violation of due process" if his appellate waiver was not "considered and intelligent." United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir, 1998); see also United States v. Proa-Tovar, 945 F.2d 1450, 1451-52 (9th Cir. 1991)("If a waiver of the right to appeal a deportation proceeding was not knowingly and intelligently made, direct judicial review has been effectively denied. . . "). Thus, both the exhaustion requirement, and the requirement that the defendant show that he was improperly denied judicial review turn on whether the appellate waiver was "considered and intelligent."

The government bears the burden of proving the deportee waived judicial review of a removal order. United States v. Lopez-Vasquez, 1 F.3d 751, 754 (9th Cir. 1993). The government must prove the waiver was considered and intelligent by clear and convincing evidence. United States v. Pallares-Galan, 359 F.3d 1088, 1097 (9th Cir. 2004). The court should indulge every reasonable presumption against waiver. Lopez-Vasquez, 1 F.3d at 754. In this case, the government cannot establish by clear and convincing evidence that Mr. Hernandez-Garcia's appellate waiver was considered and intelligent because he was incorrectly advised that no relief was available to him.

//

//

**1.   Mr. Hernandez-Garcia's Appellate Waiver was not Considered and Intelligent Because the Judge Incorrectly Informed him that No Relief from Deportation was Available to Him.**

An alien's waiver of his right to appeal his removal order is not considered and intelligent when "the record contains an inference that the petitioner is eligible for relief from deportation, but the Immigration Judge fails to advise the alien of this possibility and give him the opportunity to develop the issue." Ubaldo-Figueroa, 364 F.3d at 1049-50 (internal citations omitted). As is explained below, Mr. Hernandez-Garcia was eligible for fast-track voluntary departure and adjustment of status, and the judge not only failed to advise him of the relief, but he specifically advised Mr. Hernandez-Garcia that he was not eligible for any relief.

The record clearly contained an inference that Mr. Hernandez-Garcia was eligible for relief from deportation. During the proceeding, Mr. Hernandez-Garcia explained that he was 18 years old, and that his mother was a United States citizen. Ex. E. In fact, at one point the Judge asked the government attorney whether he had "any indication that [Mr. Hernandez-Garcia] would be eligible for cancellation of removal." Ex. E. The Judge did not wait for the government attorney to respond. Ex. E. Instead, he moved on to inquire about Mr. Hernandez-Garcia's prior hearing before an Immigration Judge. Ex. E. He asked the government attorney whether there was an order of removal in his file, to which the attorney responded that there was not. Ex. E. He went on to ask Mr. Hernandez-Garcia: "That Judge ordered your removal to Mexico?" Ex. E. He answered "yes." Ex. E. In fact, Mr. Hernandez-Garcia had never been ordered removed by an immigration judge. That judge had granted Mr. Hernandez-Garcia voluntary departure. Ex. B. Judge Bagley then immediately ordered Mr. Hernandez-Garcia removed from the United States, without any further discussion or inquiry as to his immigration history or potential for relief.

Despite the fact that the government bears a heavy burden in removal proceedings, the judge determined that Mr. Hernandez-Garcia was ineligible for relief and ordered his removal on the basis that Mr. Hernandez-Garcia *thought* that he had been ordered removed from the United States. In the "labyrinth" of immigration law, it should be expected that a layperson -- particularly someone so young -- would not know the technical, but very important, differences between a grant of voluntary departure and an order of removal. Of course, it is not surprising that Mr. Hernandez-Garcia was confused as to his prior proceeding,

since despite being granted voluntary departure he was, erroneously, physically removed to Mexico by the Immigration and Naturalization Service. Ex. B & C. On this mistaken belief of a teenager that he had been subject to a prior order of removal, Judge Bagley ordered Mr. Hernandez-Garcia removal to Mexico. Ex. E.

By ordering Mr. Hernandez-Garcia's removal, Judge Bagley was explicitly stating that he was not eligible for any form of relief from removal. At the beginning of the proceeding, Judge Bagley informed the entire group of immigrants of their rights. Ex. E. He explained that he would ask each immigrant questions to determine whether they were eligible for relief from removal. Ex. E. The judge explained that if he orders removal, it means he found that they were not eligible for relief from removal. Ex. E. Thus, by ordering Mr. Hernandez-Garcia's removal, he explicitly found that he was ineligible for relief.

Because Mr. Hernandez-Garcia was incorrectly advised that he was ineligible for relief from removal, his waiver could not have been considered and intelligent. Thus, his Fifth Amendment Due Process rights were violated.

**A.    Mr. Hernandez-Garcia Suffered Prejudice as a Result of the Due Process Violations During his Removal Proceeding.**

Mr. Hernandez-Garcia was prejudiced by the Due Process violations because he would likely have been granted fast-track voluntary departure or adjustment of status if he had been informed that such relief was available.

A defendant can demonstrate prejudice "by showing that he had plausible grounds for relief from deportation." Arce-Hernandez, 163 F.3d at 563. He does not have to show that he "actually would have been granted relief." Ubaldo-Figueroa, 364 F.3d at 1050.. It is sufficient that the defendant show that he "could have" been granted relief at his removal proceeding. United States v. Ortiz-Lopez, 385 F.3d 1202, 1204 (9th Cir. 2004). Once the defendant makes a prima facie showing that he had a plausible ground for relief, the burden shifts to the government to "demonstrate that the procedural violation *could not* have changed the proceedings' outcome." Gonzalez-Valerio, 342 F.3d at 1054 (emphasis added). Thus, it is not enough for the government to show that it was unlikely that the defendant would have been granted relief, since "even a petitioner with . . . possibly a weak case has a right to a fair hearing." Zolotukhin v. Gonzalez,

417 F.3d 1073, 1077 (9th Cir. 2005). Therefore, even though Mr. Hernandez-Garcia had a strong case for both adjustment of status and voluntary departure, he need only show that either was *plausible*.

### 1. Mr. Hernandez-Garcia was Eligible to Adjust his Status to that of a Person Admitted for Permanent Residence.

A non-immigrant may obtain relief from removal if he is granted "adjustment of status." Adjustment of status grants a non-immigrant the status of a person admitted for permanent residence. The adjustment of status statute states:

> "The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."

8 U.S.C. § 1255(a); INA 245(a).

Though the language of the statute seems to limit its applicability to aliens who were inspected and admitted or paroled into the United States, in 1998 the statute had exceptions to this requirement. Specifically, the statute contained an exception that aliens who were "physically present" in the United States, and who "entered the United States without inspection" could apply for adjustment of status if "the alien remits with such application a sum equalling $1,000." 8 U.S.C. § 1255(i)(1); INA 245(i)(1)(effective November 26, 1997 to October 27, 2000). Thus, at the time of Mr. Hernandez-Garcia's removal proceedings in 1998, he could have applied for adjustment of status despite not having been admitted or paroled, if he paid $1,000 with his application. His family would have paid the $1,000 on his behalf. Ex. A.

Thus, if Mr. Hernandez-Garcia had applied at his 1998 removal proceedings, he would have been eligible for adjustment of status if he was eligible to receive an immigrant visa and was admissible to the United States for permanent residence, and an immigrant visa was immediately available to him. 8 U.S.C. §§ 1255(a) & 1255(i)(2); INA 245(a) & 245(i)(2).

//
//

      **a.    Mr. Hernandez-Garcia was Eligible to Receive an Immigrant Visa and was Admissible to the United States.**

The allegation that Mr. Hernandez-Garcia entered the United States without inspection did not make him ineligible to receive an immigrant visa, nor make him inadmissible to the United States. Relying on INA 245(i)'s fee waiver provision, the Ninth Circuit held that an alien otherwise inadmissible under INA 212(a)(6)(A)(i) would be eligible for adjustment of status. Perez-Gonzalez v. Ashcroft, 379 F.3d 783, 790-91 (9th Cir. 2004) (holding that "[t]he statutory terms of § 245(i) clearly extend adjustment of status to aliens living in this country without legal status."); see also Costa v. Gonzalez, 439 F.3d 550 (2006) (same); Padilla-Caldera v. Gonzalez, 426 F.3d 1294 (10th Cir. 2005). Mr. Hernandez-Garcia's Notice to Appear charged him with removability under INA 212(a)(6)(A)(i) -- the same basis which the Ninth Circuit has already help would not render an alien ineligible for adjustment status. Thus, in 1998 when Mr. Hernandez-Garcia was removed, his entry without inspection would not have barred his application for adjustment of status, so long as he paid the $1,000.00 fee.

      **b.    As the Child of a United States Citizen, An Immigrant Visa was Immediately Available to Mr. Hernandez-Garcia.**

Under 8 U.S.C. § 1151(b) certain aliens are not subject to "direct numerical limitations." INA 201(b). Specifically, "immediate relatives" of United States Citizens are exempted from numerical limitations on grants of permanent residency status. 8 U.S.C. § 1151(b)(2)(A)(i); INA 201(b)(2)(A)(i). Immediate relatives include the children of citizens. Id. To qualify as a child, the alien must be under 21 years old and unmarried. 8 U.S.C. 1101(b)(1); INA 101(b)(1).

Mr. Hernandez-Garcia's mother was a United States citizen in 1998 -- she naturalized in 1990. Ex. A & F. Mr. Hernandez-Garcia was 18 years old at the time of his removal proceedings, and unmarried. Ex. A. As a qualifying child of a United States citizen, Mr. Hernandez-Garcia was exempted from any numerical limitations on permanent residency visas. Thus, a visa was immediately available to him in 1998.

//
//
//

**2.    Mr. Hernandez-Garcia was Eligible for Voluntary Departure.**

An Immigration Judge may grant "fast-track" voluntary departure in lieu of removal under 8 U.S.C. § 1229c(a).[2] INA 240B. By statute, fast-track voluntary departure is not available to aliens who have been convicted of aggravated felonies or who fall under certain terrorist or security threat categories. 8 U.S.C. § 1229c(a)(1); INA 240B(a)(1). Since Mr. Hernandez-Garcia had not been convicted of an aggravated felony and did not fall into any terrorist or security threat categories, he was not barred from receiving relief through fast-track voluntary departure.

Mr. Hernandez-Garcia met all the regulatory requirements to be granted fast-track voluntary departure under 8 C.F.R. § 240.26.[3] One regulation is that the alien request fast-track voluntary departure before the removal hearing, or at the removal hearing. 8 C.F.R. § 240.26(b)(1)(i)(A). Mr. Hernandez-Garcia did not request fast-track voluntary departure at his removal hearing. However, this was due to the fact that Judge Bagley failed to inform Mr. Hernandez-Garcia that he was eligible for it. Immigration Judges have a duty to inform all aliens in removal proceedings of any "apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing." 8 C.F.R. § 240.11.[4] Where the judge has failed to inform the alien of the potential relief, the alien is not ineligible for fast-track voluntary departure because he failed to request it. See United States v. Ortiz-Lopez, 385 F.3d 1202 (9th Cir. 2004)(finding that alien had been eligible for fast-track voluntary departure when the immigration judge had not informed alien that the potential relief was available, and alien had not requested it at removal proceeding). The rest of the regulations are: that the alien not make any further requests for relief, or that the alien withdraws such requests; that the alien concedes removability; waives appeal of all issues; and has not been convicted of an a crime under INA

---

[2] Section 1229c contains two voluntary departure provisions: § 1229c(a), and § 1229c(b). Section (b) provides for voluntary departure *at the conclusion of proceedings*. Section (a) provides for voluntary departure *in lieu of proceedings*, or at any time *prior to the conclusion of proceedings*. Section (b)'s requirements are more stringent than the requirements under (a). Section (a) is frequently referred to as "fast-track voluntary departure." See United States v. Ortiz-Lopez, 385 F.3d 1202, fn1 (9th Cir. 2004).

[3] 8 C.F.R. § 240.26 refers to the relevant statutory codification in 1998 (as do all statutory cites in this motion), when Mr. Hernandez-Garcia's removal proceedings took place. It is now codified at 8 C.F.R. § 1240.26.

[4] Presently codified as 8 C.F.R. § 1240.11.

101(a)(43) (aggravated felonies) and is not deportable under INA 237(a)(4) (relating to categories of terrorists and security threats). 8 C.F.R. § 240.26(b)(1)(i)(B)-(E). Mr. Hernandez-Garcia met all of these regulations.

Additionally, a grant of fast-track voluntary departure may not be made to a person who was "previously permitted to so depart after having been found inadmissible under section 1182(a)(6)(A) of this title." 8 U.S.C. § 1229c(c); INA 240B(c). Mr. Hernandez-Garcia had appeared before an immigration judge on a prior occasion in 1997. At that proceeding, Mr. Hernandez-Garcia was granted voluntary departure. Ex. B. Assuming *arguendo* that Mr. Hernandez-Garcia had been found inadmissible under 8 U.S.C. § 1182(a)(6)(A) at that hearing, he was not barred from a grant of fast-track voluntary departure in 1998 because Mr. Hernandez-Garcia was never "permitted to so depart." 8 U.S.C. § 1229c(c); INA 240B(c). The same day that Mr. Hernandez-Garcia was granted voluntary departure he was removed to Mexico by the Immigration and Naturalization Service in violation of his Fourth Amendment rights against unlawful seizure, his Fifth Amendment rights to due process, and in direct contravention of the judge's orders. Ex. C. As even the hand-written note in Mr. Hernandez-Garcia's A-file indicates, this physical removal to Mexico was not pursuant to any legal authority and "should have been recorded as a voluntary departure." Ex. C. Thus, Mr. Hernandez-Garcia never departed voluntarily. By unlawfully physically removing Mr. Hernandez-Garcia to Mexico, the United States government prevented Mr. Hernandez-Garcia from being "permitted to so depart." 8 U.S.C. § 1229c(c); INA 240B(c). As such, Mr. Hernandez-Garcia was not barred from being granted fast-track voluntary departure under 8 U.S.C. § 1229c(c); INA 240B(c).

### 3. Mr. Hernandez-Garcia's Application for Adjustment of Status or Voluntary Departure Likely Would have been Approved.

Although Mr. Hernandez-Garcia need only show that an application for adjustment of status *plausibly could have* been approved, Mr. Hernandez-Garcia can show that an application for fast-track voluntary departure or adjustment of status *likely would have* been approved. In 1997, eighteen percent of *all* decisions in removal proceedings were voluntary departures. See U.S. Dept. Justice, Report Number I-99-09, Introduction, *available at* http://www.usdoj.gov/oig/reports/INS/e9909/i9909p1.htm. This percentage represents all removal proceedings -- whether the alien had been previously removed, was statutorily ineligible for voluntary departure, or had already voluntarily departed. Thus, the percentage of

grants of voluntary departure to aliens who were *eligible* for it was certainly much, much higher. Mr. Hernandez-Garcia's equities made it very likely that had Judge Bagley considered granting fast-track voluntary departure, he would have found that he qualified. At the time of his removal proceeding, Mr. Hernandez-Garcia was just 18 years old. Ex. A. His mother and siblings lived in the United States. Ex. A. He had not lived in Mexico since he was a very young child, and did not have a family in Mexico. Ex. A. Mr. Hernandez-Garcia was a teenager, about to enter a community and country with which he was unfamiliar. In that context, standard life tasks such as finding a job or a place to live can be extraordinarily difficult. In his case, the equities weighed in favor of granting him fast-track voluntary departure -- where he could have been released on bond for long enough to get family assistance with his impending move, close up his affairs in the United States, and arrange for shelter so that he did not arrive in Mexico as a young homeless man.

These same equities made it likely that Mr. Hernandez-Garcia would have been granted adjustment of status. He had lived the vast majority of his life in the United States. Ex. A. His family ties were in California. Ex. A. He received an American education, going to elementary, junior high, and high school in California. Ex. A. He was employed in the United States. Ex. A. His presence in the United States was important to his family, both emotionally and financially. Ex. A.

### III.

### CONCLUSION

For the above reasons, Mr. Hernandez-Garcia requests that this Court grant his motion and dismiss the indictment.

Respectfully submitted,

Dated: July 21, 2008

 *s/   Bridget Kennedy*
**BRIDGET KENNEDY**
Federal Defenders of San Diego, Inc.
Attorneys for Juan Manuel Hernandez-Garcia