KAREN P. HEWITT
United States Attorney
LUELLA M. CALDITO
Assistant U.S. Attorney
California State Bar No. 215953
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7035
Luella.Caldito@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.    08CR1004-H |
| Plaintiff, | ) ) ) | DATE:       August 4, 2008 |
| v. | ) | TIME:        2:00 p.m. |
| JUAN HERNANDEZ-GARCIA, | ) ) ) | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR DUE PROCESS VIOLATION DURING UNDERLYING REMOVAL PROCEEDING |
| Defendant. | ) ) ) ) ) ) ) | |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Luella M. Caldito, Assistant United States Attorney, and hereby files its Response in Opposition to Defendant's above-referenced Motion. This Response is based upon the files and records of this case.

**I**

**STATEMENT OF THE CASE**

On April 2, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with Deported Alien Found In the United States, in violation of Title 8, United States Code, Section 1326(a) and (b). The Indictment alleges that Defendant had been

1  removed from the United States subsequent to November 26, 2004. Defendant was arraigned on the

2  Indictment on April 10, 2008, and pled not guilty to the Indictment**.**

3                                                          **II**

4                                            **STATEMENT OF FACTS**

5        **A.     THE INSTANT OFFENSE**

6             On January 23, 2008, at approximately 3:50 p.m., Officer Whitaker of the Escondido Police

7  Department stopped Defendant for riding his bicycle on the sidewalk, which is a violation of Escondido

8  Municipal Code 5-5. Defendant identified himself as Juan Hernandez Garcia with a date of birth of

9  December 1, 1979. Defendant stated that he had never been arrested nor issued a citation from the

10 police. Hernandez further stated that he had no form of identification and that he had no other names.

11            While questioning Defendant, Officer Whitaker noticed that Defendant's speech was rapid and

12 that his hands were fidgety. At one point during the questioning, Defendant stood up against Officer

13 Whitaker's instructions.   In order to prevent Defendant from fleeing before determining his

14 identification, Officer Whitaker handcuffed Defendant. Officer Whitaker then asked Defendant if he

15 could search him for identification. Defendant consented to the search. While searching Defendant's

16 right lower leg, Officer Whitaker noticed a piece of clear plastic sticking out of Defendant's right shoe.

17 When Officer Whitaker removed the clear plastic bag, he recovered a glass drug pipe with white residue

18 inside of it.

19            During the detention, Defendant's cell phone rang twice. Defendant requested that Officer

20 Whitaker answer his phone. The first time the caller asked for "Brian Hernandez." Officer Whitaker

21 identified himself to the caller and explained that he must have the wrong number. Immediately after

22 hanging up the phone, it rang again. When Officer Whitaker answered the phone, the caller then asked

23 for "Juan."

24            Officer Whitaker then transported Defendant to the Escondido Police Department to confirm

25 Defendant's identity. At the police department, Officer Whitaker discovered Defendant's true identity

26 by using a booking computer. The records check revealed that Defendant had a warrant under the name

27 of Bryan Diaz Hernandez. The records check also revealed that Defendant was previously deported

28 from the United States.

Officer Whitaker then advised Defendant of his <u>Miranda</u> rights, which he acknowledged and waived.  Officer Whitaker then questioned Defendant about the glass pipe recovered from his shoe.  Defendant was later booked into Vista County Jail.

While in custody, Immigration and Customs Enforcement Agent G. Bautista conducted a field interview of Defendant.  Defendant freely admitted that he was in the United States illegally and had no immigration documents that would allow him to enter or remain in the United States.  After determining that Defendant was a citizen of Mexico, Defendant was transported to the Immigration Customs Enforcement Field Office in San Diego for further investigation.  Record checks revealed that Defendant was previously deported or removed from the United States.  Defendant was then advised of his <u>Miranda</u> rights, which he again acknowledged and waived.  Defendant stated that his true name was Juan Manuel Hernandez-Garcia.  Additionally, Defendant admitted that he was a citizen of the Mexico by birth in Jalisco, Mexico.  Defendant stated that he had not obtained permission to enter the United States and that he did not have any documents that would allow him to enter or reside in the United States.  Lastly, Defendant admitted that he knew it was against the law to re-enter the United States after being deported.

### B.    DEFENDANT'S IMMIGRATION HISTORY

Defendant is a citizen of Mexico.  On October 28, 1997, Defendant appeared before an immigration judge for removal proceedings and was granted voluntary departure until October 29, 1997.  <u>See</u> October 28, 1997 Immigration Judge Order, attached hereto as Exhibit 1.  Defendant was subsequently removed to Mexico that same day.

On January 21, 1998, less than three months after Defendant was granted voluntary departure, he appeared again before an immigration judge for removal proceedings.  This time, the immigration judge ordered Defendant removed from the United States.  <u>See</u> January 21, 1998 Immigration Judge Order, attached hereto as Exhibit 2.  That same day, Defendant was removed from the United States to Mexico.  Defendant was physically removed from the United States on several other occasions, including July 24, 1998, November 3, 1998, July 16, 1999, July 7, 2000, June 19, 2001, July 27, 2004 and December 15, 2006.

1    **C.    DEFENDANT'S CRIMINAL CONVICTIONS**

2    On December 5, 1997, Defendant was convicted of vehicle theft, in violation of California

3    Vehicle Code § 10851(a).  For that conviction, Defendant was sentenced to 120 days jail and 3 years

4    probation.  On December 20, 1999, Defendant's probation was revoked and he was sentenced to 2 years

5    imprisonment.

6    On May 27, 1998, Defendant was convicted of receiving stolen property, in violation of

7    California Penal Code § 496(a).  Defendant received 180 days jail and 3 years probation.  On

8    December 15, 1999, Defendant's probation was revoked and he was sentenced to 2 years imprisonment.

9    On December 15, 1998, Defendant was again convicted under California Penal Code § 496(a).

10    Defendant received a sentence of 2 years imprisonment.

11    On December 15, 2004, Defendant suffered another conviction under California Vehicle Code

12    § 10851(a).  Defendant was sentenced to 2 years imprisonment.

13    Additionally, Defendant was convicted of federal offenses within the Southern District of

14    California.  On December 19, 2000, Defendant suffered a conviction under 18 U.S.C. § 911, false claim

15    to United States citizenship, in Criminal Case No. 00CR2501-BTM.  Defendant was initially sentenced

16    to 13 months imprisonment.  Defendant's supervised release in Criminal Case No. 00CR2501-BTM was

17    revoked on February 8, 2002 and Defendant was sentenced to 12 months imprisonment.   On

18    December 24, 2001, Defendant received misdemeanor and felony convictions under 8 U.S.C. § 1325,

19    illegal entry, in Criminal Case No. 01CR3395-GT.  For those convictions, Defendant received a total

20    of 24 months.

21    **III**

22    **ARGUMENT**

23
      **A.    DEFENDANT'S DEPORTATION HEARING DID NOT VIOLATE DUE**
24    **PROCESS, AND DEFENDANT CANNOT ESTABLISH PREJUDICE**

25    Defendant moves to dismiss the Indictment, alleging a violation of due process at his removal

26    hearing.  Defendant argues that he did not waive his right to appeal the immigration judge's order and

27    he suffered prejudice from the procedural defects of his removal proceeding.  His arguments are based

28    on his claim that the immigration judge failed to advise him that he was eligible for relief from

deportation under 8 U.S.C. 1255, also known as INA § 245 relief, and 8 U.S.C. §1229c(a), also known as INA 240B(a) or "pre-conclusion voluntary departure."  Defendant's arguments lack merit.

### 1.    Legal Standards

"Because the underlying removal order serves as a predicate element of an illegal entry offense under  § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause." United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004); see also United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987).  An alien must demonstrate three things before he or she can collaterally attack a prior removal: "(1) exhaustion of available administrative remedies to seek relief from the deportation order; (2) improper deprivation of an opportunity for judicial review; and (3) fundamental unfairness of the underlying removal order." United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir 2006); see also 8 U.S.C. §  1326(d).

A removal order is "fundamentally unfair" if (1) due process was violated by defects in the alien's removal hearing, and (2) the alien suffered prejudice as a result of the defects. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004); see also Pallares-Galan, 359 F.3d at 1095. Prejudice can only be demonstrated if Defendant shows that he had plausible grounds for relief from deportation. United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998).  Put differently, he must "show that 'a direct appeal could. . . have yielded a different result." United States v. Corrales-Beltran, 192 F.3d 1311, 1318 (9th Cir. 1998)(internal citations omitted).

### 2.    Defendant Did Not Exhaust His Administrative Remedies And Was Not Denied Judicial Review

Defendant participated in his removal hearing on January 21,1998.  During the hearing, the immigration judge advised Defendant of his right to appeal:

> Today I will make a decision in each of your cases.  If you agree with my decision, you can accept it as final.  If you do not agree you have the right to appeal my decision to the Board of Immigration Appeals which is like a higher court.  If you are not sure whether or not you want to appeal you can reserve your right to appeal.  When I tell you my decision and ask you if you want to accept it as final, you should accept it as final only if you agree with it completely and have no interest whatsover in appealing.  If you indicate to me that you have any interest in appealing I will at that point further explain the appeals process.

[Defendant's Motion, Exhibit E, p. 14.]

1    At the conclusion of Defendant's hearing, the immigration judge asked Defendant if he wanted

2    to accept the order of removal from the United States to Mexico as the final decision. [Defendant's

3    Motion, Exhibit E, p. 16.]  Defendant answered in the affirmative.  [Id.] The immigration judge then

4    asked Defendant if he wanted to waive his right to appeal. [Id.]  Again, Defendant answered in the

5    affirmative.  [Id.]  This appellate waiver was considered and intelligent.

6    This is a classic case of failure to exhaust known remedies.  See Noriega-Lopez v. Ashcroft, 335

7    F.3d 874, 879-80 (9th Cir. 2003) (where alien failed to challenge of sufficiency of proof of prior

8    conviction on direct appeal, court would not consider it on collateral attack); United States v. Hinojosa-

9    Perez, 206 F.3d 832, 836 (9th Cir.  2000) (holding that an alien who received notice of his right to file

10   a motion to reopen immigration hearing and who failed to do so did not exhaust his administrative

11   remedies);  Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) ("Failure to raise an issue in an

12   appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives

13   this court of jurisdiction to hear the matter.").  Defendant has not satisfied the first prong for a collateral

14   attack: exhaustion of administrative remedies to seek relief from the deportation order.

15   United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001).  On this ground alone, Defendant's

16   collateral attack on his deportation fails.

17   Moreover, since Defendant was advised of his appellate rights and subsequently waived his

18   rights, he cannot show that he was denied judicial review of his removal order.  Thus, Defendant's

19   attempt to collaterally attack the removal order fails on this ground as well.  See 8 U.S.C. §

20   1326(d)(requiring alien to satisfy all three conditions before he can collaterally attack the prior

21   deportation order).

22   **3.    Defendant Was Not Eligible for Adjustment of Status**

23   Under 8 U.S.C. § 1255(i), aliens present in the United States who entered without inspection

24   may apply to the Attorney General for adjustment of status to that of a lawfully permanent resident.

25   8 U.S.C. § 1255(i)(1)(A)(i)(1998).  Defendant argues that his appellate waiver was not considered and

26   intelligent because the immigration judge did not inform him that he was eligible for adjustment of

27   status under 8 U.S.C. §1255. [Defendant's Motion at 5.]  However, as discussed below, Defendant was

28

1    not eligible for the adjustment.  Therefore, the immigration judge did not need to advise him of such

2    relief.  Additionally, for the same reasons, Defendant cannot show any prejudice.

3                    a.    <u>Defendant Did Not Meet the Requirements to Apply for Adjustment of Status</u>

4            In determining whether Defendant was eligible to receive an adjustment of status, Defendant

5    must first show that he met the requirements to merely submit an application to the Attorney General.

6    Section 1255(i)(1) lists those requirements.  As Defendant correctly points out (Defendant's Motion at

7    7), an alien is required to pay a $1,000 application fee in order to apply for adjustment of status.

8    8 U.S.C. § 1255(i)(1)(1998).  However, Defendant completely fails to recognize that in addition to the

9    $1,000 application fee, the alien must also be the beneficiary of (1) a petition for classification under

10   8 U.S.C. § 1154 that was filed with the Attorney General on or before January 14, 1998 or (2) an

11   application for a labor certification under section 1182(a)(5)(A) that was filed pursuant to the

12   regulations of the Secretary of Labor.  8 U.S.C. § 1255(i)(1)(B)(i) and (ii) (1998).  Notably, the deadline

13   to meet the beneficiary condition under 8 U.S.C. § 1255(i)(1)(B)(i) was January 14, 1998, seven days

14   <u>before</u> Defendant's removal hearing.

15          At Defendant's January 21, 1998 removal hearing, the immigration judge inquired into whether

16   Defendant's mother submitted a visa petition for Defendant.  [Defendant's Motion, Exhibit E, page 15.]

17   Defendant informed the immigration judge that his mother never filed a visa petition for him.  [<u>Id.</u>]

18   Since a petition was not filed prior to the January 14, 1998 deadline, Defendant did not meet the

19   requirements necessary to submit an application for adjustment of status at the time of his removal

20   hearing.  <u>See</u> 8 U.S.C. § 1255(i)(1)(B)(i).  Thus, the immigration judge was not required to advise

21   Defendant of § 1255 and Defendant's due process rights were not violated.

22                   b.    <u>An Immigrant Visa Was Not Immediately Available to Defendant</u>

23          Even if Defendant met the requirements to merely apply for adjustment of status, Defendant still

24   cannot show that he was eligible for the adjustment.  Section 1255(i)(2) states that after receipt of the

25   application and application fee for adjustment of status, the Attorney General may adjust the status of

26   the alien to a lawful permanent resident if (1) the alien was eligible to receive an immigrant visa and is

27   admissible  for permanent residence; <u>and</u> (2) an immigration visa is immediately available to the alien

28   at the time the application for adjustment of status is filed.  <u>See</u> 8 U.S.C. § 1255(i)(2)(A) and (B)(1998).

1     Immigrant visas are immediately available to children of United States citizens since they are

2   not subject to the numerical limitations on the grant of visas.  8 U.S.C. § 1151(b)(2).  Defendant's entire

3   argument that an immigrant visa was immediately available to him in 1998 rests on the false claim that

4   his mother was a citizen of the United States at the time of his removal hearing.  Defendant and his

5   mother both claim that she became a naturalized citizen in 1990, eight years prior to Defendant's

6   removal hearing. [Defendant's Motion at 8; Declaration of Defendant's Mother attached to Defendant's

7   Motion as Exhibit A.]  However, the mother's naturalization certificate, attached to Defendant's Motion

8   as Exhibit   F, shows that she did not become a naturalized United States citizen until

9   November 12, 1999, nearly two years after Defendant's removal hearing.  Therefore, contrary to

10  Defendant's argument, he was not exempted from the numerical limitations on immigrant visas.  As

11  such, an immigrant visa was not immediately available to him at the time of his removal hearing on

12  January 21, 1998.

13    Unlike children of citizens, children of permanent residents are not exempted from the numerical

14  limitations under § 1151.  8 U.S.C. § 1151(b)(2).  The Department of State publishes a Visa Bulletin

15  to show when a visa is immediately available to an alien based on the alien's home country and "priority

16  date," otherwise known as the date their visa petition was filed and approved.  For example, in March

17  of 1999, approximately one year after Defendant's removal hearing, immigrant visas for Mexican

18  children of lawful permanent residents were immediately available to those aliens who applied for the

19  immigrant visa before July 22, 1993.  See March 1999 Visa Bulletin, attached hereto as Exhibit 3, p.

20  2.  In other words, an applicant from Mexico who was the child of a lawful permanent resident had to

21  wait more than 6 years after his or her petition was filed and approved before an immigrant visa became

22  "immediately available."

23    Thus, in order for Defendant to show that an immigrant visa was "immediately available" to him

24  at his January 21, 1998 hearing based on his relationship with his mother, a lawful permanent resident

25  at the time, Defendant would have to show that his family-based petition was filed long before 1993.

26  See Exhibit 3.  However, as Defendant admitted at his deportation hearing, no petition was filed on his

27  behalf. [Defendant's Motion, Exhibit E, page 15.]  Because an immigrant visa was not immediately

28

1    available to Defendant at the time of his 1998 removal hearing, the immigration judge did not err and

2    Defendant's due process rights were not violated.

3    **4.    Defendant Was Not Eligible for Pre-Conclusion Voluntary Departure**

4    Defendant also argues that his waiver of appeal was not considered and intelligent because he

5    was not advised of relief under 8 U.S.C. § 1229c(a), pre-conclusion voluntary departure. [Defendant's

6    Motion at 9-10.] Defendant also claims that he suffered prejudice from this alleged deficiency. [Id.]

7    Both arguments are meritless because Defendant was not eligible for pre-conclusion voluntary departure

8    at the time of his removal hearing.

9    Under § 1229c(a)(1), prior to the completion of the removal proceedings, an alien may be

10    permitted to voluntarily depart if the alien had not been convicted of an aggravated felony or engaged

11    in any terrorist activity.  8 U.S.C. § 1229c(a)(1)(1998).  However, if an alien was previously granted

12    voluntary    departure,    the    alien    was    not    eligible    for    relief    under    §    1229c(a)(1).

13    8 U.S.C. § 1229c(c)(1998).

14    On October 28, 1997, Defendant appeared before an immigration judge for removal proceedings.

15    At that hearing, the immigration judge granted Defendant voluntary departure.  See Exhibit 1.  Because

16    Defendant was granted voluntary departure approximately three months prior to his January 21, 1998

17    removal hearing, Defendant was not eligible for relief.  See 8 U.S.C. § 1229c(c).

18    Defendant argues that the limitation under § 1229c(c) does not apply to him because immigration

19    officials removed him on October 28, 1997 despite the immigration judge's grant of voluntary departure.

20    [Defendant's Motion at 10.]  Defendant is essentially arguing that his removal renders the immigration

21    judge's order of voluntary departure invalid and thus, he was still eligible for voluntary departure when

22    he appeared at his second removal hearing three months later.

23    Defendant's argument would lead to an illogical result.  Defendant is suggesting that the actions

24    of immigration officials changed the immigration judge's grant of voluntary departure into an order of

25    removal.  However, the immigration judge's grant of voluntary departure stands regardless of how

26    Defendant left the United States.  The main benefit of voluntary departure to an alien is that it facilitates

27    the possibility of return into the United States.  See Tzantarmas v. United States, 402 F.2d 163, 165 n.1

28    (9th Cir. 1968).  Unlike an alien who is ordered removed from the United States, an alien who is granted

1   voluntary departure would not be barred from applying for entry into the United States.

2   See 8 U.S.C. § 1182(a)(9)(A)(ii)(I)(barring entry for aliens ordered removed for 10 or 20 years from the

3   date of removal).

4        If Defendant had applied for entry after being removed on October 28, 1997, Defendant would

5   not have been subject to the 10-year bar simply because immigration officials removed him rather than

6   allowed him to depart voluntarily pursuant to the immigration judge's order.  Defendant should not be

7   able to use the immigration officials' mistake as a shield from § 1182(a)(9)(A)(ii)(I)'s bar for aliens

8   ordered removed and as a sword to argue that he is not subject to the limitation under § 1229c(c) which

9   allows for only one grant of voluntary departure.

10       After the immigration judge granted voluntary departure on October 28, 1997, Defendant could

11  have applied for admission into the United States without being barred.  Instead, he chose to return to

12  the United States illegally and less than two months later, be convicted for theft of a vehicle on

13  December 5, 1997.  When Defendant appeared at his second removal hearing on January 21, 1998, the

14  immigration judge was not required to advise Defendant of relief from deportation.  Thus, Defendant's

15  waiver was considered and intelligent and his due process rights were not violated.

16                                          **IV**

17                                    **CONCLUSION**

18       For the foregoing reasons, the United States requests that Defendant's Motion be denied.

19

20       DATED: August 1, 2008.

21                                    Respectfully Submitted,

22                                    KAREN P. HEWITT
                                      United States Attorney
23

24

25                                    LUELLA M. CALDITO
                                      Assistant U.S. Attorney
26                                    Luella.Caldito@usdoj.gov

27

28

1

2

3                          UNITED STATES DISTRICT COURT

4                         SOUTHERN DISTRICT OF CALIFORNIA

5   UNITED STATES OF AMERICA,          )          Case No. 08CR1004-H
                                       )
6                Plaintiff,            )
                                       )
7            v.                        )
                                       )          CERTIFICATE OF SERVICE
8   JUAN HERNANDEZ-GARCIA,             )
                                       )
9                Defendant.            )
    _____)

10  IT IS HEREBY CERTIFIED THAT:

11          I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of

12  age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

13          I am not a party to the above-entitled action.  I have caused service of GOVERNMENT'S

14  RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR DUE

15  PROCESS VIOLATION DURING UNDERLYING REMOVAL PROCEEDING on the following

16  parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System,

17  which electronically notifies them.

18          1. Bridget Kennedy of Federal Defenders of San Diego, Inc.

19          I hereby certify that I have caused to be mailed the foregoing, by the United States Postal

20  Service, to the following non-ECF participants on this case:

21          None

22  the last known address, at which place there is delivery service of mail from the United States Postal

23  Service.

24          I declare under penalty of perjury that the foregoing is true and correct.

25          Executed on August 1, 2008

26

27                                          /s/ Luella M. Caldito
                                            LUELLA M. CALDITO
28